820 A.2d 685

SHERWOOD PRODUCTS, INC., PAUL CHU AND THERESA CHU, PLAINTIFFS–RESPONDENTS/CROSS–APPELLANTS, v. CONNECTICUT INDEMNITY COMPANY AND CONNECTICUT SPECIALTY INSURANCE COMPANY, DEFENDANTS–APPELLANTS/CROSS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 3, 2002—Decided December 30, 2002.

Before Judges SKILLMAN, CUFF and WINKELSTEIN.

*Richard S. Nichols* argued the cause for appellants/cross-respondents (*Gennet, Kallman, Antin & Robinson,* attorneys; *Stanley W. Kallman,* on the brief).

*Franklin P. Solomon* argued the cause for respondents/cross-appellants (*Weitz & Luxenberg,* attorneys; *Mr. Solomon,* on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

This is an appeal by defendants Connecticut Indemnity Company and Connecticut Specialty Insurance Company [1] from a final judgment in favor of plaintiffs for $22,000 plus $3,612 in prejudgment interest on a claim under a "Jewelers Block" insurance policy.

Plaintiffs Paul and Theresa Chu own and operate Sherwood Products, Inc. (Sherwood), a jewelry company that does most of its sales at trade shows. In May 1994 plaintiffs submitted an application for insurance coverage on their inventory through a broker. The application form included questions concerning the applicant's bookkeeping practices, which the Chus answered as follows:

6. BOOKKEEPING

a. Do you keep a detailed and itemized inventory of your stock? *YES*

---

[1] Defendants are apparently affiliated companies.

b. Do you keep a record of purchases and sales? *YES*

c. Do you maintain detailed records of the property of others in your care, custody or control? *YES*

d. How often do you take a physical stock inventory? *YEARLY*

Based on the information contained in plaintiffs' application, defendants issued a Jewelers Block policy to Sherwood. Endorsement #2 of the policy specifically provided for off premises coverage at trade shows.

The policy issued to plaintiffs included a section which required them to maintain specified records of their inventory, purchases and sales, and any merchandise taken from its premises to another location:

**c. RECORDS AND INVENTORY**

You will keep accurate records of your business and retain them for three years after the policy ends.

These records will consist of:

(1) An itemized inventory of all your stock in trade;

(2) Records of all purchases and sales whether cash or credit;

(3) Records of the property of others in your care, custody or control;

(4) A detailed listing of travelers stock; and

(5) Records of all other property away from your premises.

You will also take a physical inventory of all your stock in trade at least every 12 months.

On May 4, 1997, the Chus and two other Sherwood employees went to a four-day trade show in Atlantic City. They brought approximately 600 pieces of jewelry, which had an aggregate value of $250,000 to $300,000, with them. They carried most of the jewelry in a Samsonite case. However, Mrs. Chu also carried some "special items" in a brown handbag. When the Chus set up their booth at the trade show, they placed this handbag on a table behind the main working area.

Around 1 p.m. on the first day of the show, two hours after it had begun, the Chus reported that the handbag had been stolen to the security department at the trade show, who then contacted the Atlantic City Police Department. The Chus had no written record of the items contained in the handbag or in the Samsonite case.

The items that the Chus reported to have been stolen were never recovered and no one was apprehended for the theft.

After the theft, the Chus made varying statements concerning what items of jewelry had been in the handbag and their value. The day of the theft they reported to the security department at the trade show that the handbag contained $50,000 in cash and jewelry. Later that day, the Chus reported to the Atlantic City Police Department that the handbag contained the following pieces of jewelry:

One (1) pair of diamond stud earrings total weight 2ct. Valued at $9,000.

One (1) diamond bracelet total weight 3ct. Valued at $4,000 to $5,000.

One (1) Cuff bracelet 18kt. Gold. Valued at $2,000.

One (1) Strand of pearls 9½ mm. With a gold clasp. Valued at $5,000.

Several pairs of earrings and jewelry to be repaired. Valued at $2,000 to $3,000.

On May 15, 1997, the Chus provided their insurance agent with the following written list of the missing items and their values:

(1) Diamond Earring, Total Weight 2.1 ct. 18K $10,000

(2) Diamond Bracelet 3.0 ct 18K $6,000

(3) Cultured Pearl Necklace, 9 ½ mm. $6,000

(4) 18K Italian Gold Bangles 18K, 2x1500 = $3,000

(5) 18K gold Earrings, 6 pair $3,000

(6) Cash approximately $2,000

(7) A roll of 14K Bracelets, $5,000

Defendants denied plaintiffs' claim on various grounds, including plaintiffs' failure to comply with the record-keeping requirements of their policy. Plaintiffs then brought this action seeking recovery under the policy.

At a bench trial, Mrs. Chu testified that plaintiff did not maintain any lists which showed all of their purchases, sales or the inventory on hand. Plaintiffs' only records consisted of invoices for individual purchases and receipts for individual sales. Mrs. Chu also admitted that plaintiffs had no written record of the items of jewelry brought to the May 4, 1997 trade show in Atlantic City. Consequently, her own memory was the sole source of information for her reports to the police and the defendants

concerning the contents of the handbag allegedly stolen at the show.

John Kim, an accountant retained by defendants to examine plaintiffs' records, testified that the Chus did not provide him with any computer printouts of their purchases, sales or inventory. The only documentation the Chus were able to provide him regarding the conduct of their business were individual purchase invoices and receipts for sales of jewelry. Kim also testified that the Chus did not maintain a "travel list" and had no written record whatever of the items placed in the handbag that was allegedly stolen at the trade show. Therefore, Kim was unable to determine from plaintiffs' records what items were contained in the handbag at the time of the alleged theft or the value of the items plaintiffs claimed had been stolen.

In rejecting defendants' claim that plaintiffs failed to comply with their record-keeping obligations under the Jewelers Block insurance policy, the trial court stated:

[T]here was no "inventory" such as one would find in Macy's, Sear's and Roebucks, et cetera, that being a run sheet where you have inventory at the top and you have six washers and dryers—six washers valued at $10.00 each, $60.00; ... et cetera.... We didn't have that in this case. There was no inventory.

....

... But, anyhow, as far as [plaintiffs'] record keeping and inventory ... is concerned, I find that the plaintiffs ... they have substantially complied with the requirements of the policy. And the reason I say that is because they had the receipts showing the dates of purchase of these various items and they have ... I guess they're invoices,.... They had the pieces of paper that show when they bought the items and what they paid for those items. They have no record showing a sale of those items except for the one item.... So, I find as far as the inventory is concerned, there is a substantial compliance with the requirements of the policy.

And ... based upon my finding that there has been a substantial compliance with the requirements of the policy, that being an inventory kept, maybe a little lax, but as counsel has stated, I think they are a little more than a Mom and Pop organization, but when you get to jewelry, you can have, I guess, a couple of pieces of jewelry and get it up to a million dollars a year in sales....

But, anyhow, they were lax in their record keeping, no doubt about it. But I think under the facts of this case, there has been substantial compliance which would entitle them to recover under the policy. Therefore, I find in favor of the plaintiffs and against the defendant for the earrings, $10,000; the diamond

bracelet, $6,000; the two gold bangles in the amount of $3,000, which is—they come to $1500 each; the roll of bracelets, $3,000; roll of bracelets, $5,000.

Plaintiffs subsequently moved for prejudgment interest, counsel fees and costs. The trial court awarded plaintiffs prejudgment interest in the amount of $3,612, but denied their motion for counsel fees and costs.

Defendants appealed from the judgment in plaintiffs' favor and plaintiffs cross-appealed from the denial of their motion for counsel fees and costs. Plaintiffs did not present any argument in support of the cross-appeal in their brief. Therefore, the cross-appeal must be deemed to have been abandoned.

On appeal, defendants argue that they properly denied plaintiffs' claim because plaintiffs made misrepresentations on their application for a policy, plaintiffs failed to comply with the record-keeping requirements of the policy, and plaintiff's claim was excluded from coverage as an "unexplained disappearance." We conclude that plaintiffs' own testimony shows that they failed to comply, or even substantially comply, with the record-keeping requirements of the policy issued by defendants and therefore the judgment in their favor must be reversed. This conclusion makes it unnecessary to consider defendants' other arguments.

As previously noted, the policy issued by defendants specifically required plaintiffs to "keep accurate records of [their] business," consisting of:

(1) An itemized inventory of all your stock in trade;

(2) Records of all purchases and sales whether cash or credit;

(3) Records of the property of others in your care, custody or control;

(4) A detailed listing of travelers stock; and

(5) Records of all other property away from your premises.

Plaintiffs' own testimony and the documents they introduced into evidence show that they did not maintain "[a]n itemized inventory of all [their] stock in trade." The only records plaintiffs were able to provide defendants' forensic accountant, John Kim, or to introduce at trial were individual invoices for purchases of

jewelry and receipts for their sales. Such documents do not constitute an itemized inventory of stock in trade.

Most significantly, plaintiffs admitted that they did not have "[a] detailed listing of [the] travelers stock" brought to the trade show where the alleged theft occurred. Mrs. Chu gave the following testimony:

Q. Other than those invoices, was there any kind of a master list of all the merchandise that you took with you from your company to Atlantic City that you could consult?

A. Well, again, we have like sort of an inventory list what we have, what we sold and what's missing. And this—this is a small business. I was the one, you know, started it.

Q. Okay. Can I please get an answer to the question. Did you prepare a master list of all the merchandise—

A. No, we didn't.

Q. —that you took from Voorhees to Atlantic City?

A. It was not required.

Q. Was not required?

A. By the insurance.

. . . .

Q. Your answer is you did not prepare a traveling list, is that correct?

A. No—no.

Kim testified on behalf of the defendants that the absence of a detailed listing of travelers stock prevented him from verifying plaintiffs' claimed loss from the alleged theft at the trade show:

[I]f there was a travel list and a burglary, a robbery of this nature happened, the correct thing I would have done is take a complete physical inventory immediately upon discovery at which point we can start with the travel list, deduct what was sold, deduct post lost inventory and the difference is what's missing.

We find no support in the record for the trial court's conclusion that plaintiffs "substantially complied with the requirements of the policy." This is not simply a case where policyholders maintained an inventory list which was sloppy or deficient in some respect not material to the claim. Rather, plaintiffs maintained no records at all that could be fairly described as an "itemized inventory" or "detailed listing of travelers stock." Therefore, plaintiffs could recover under the policy for the alleged theft at the trade show

only if the court completely disregarded the record-keeping requirements of the policy or found them to be unenforceable.

However, we discern no basis either for disregarding or refusing to enforce this section of the policy. The purpose of the kind of record-keeping requirement required under that section is

> to enable the insurer, by means of accurate records, to ascertain with reasonable certainty the amount of the loss and the extent of liability....

> ... [S]uch records are not sufficient if from them the loss cannot be determined without resorting to extraneous sources, especially the oral testimony of an interested party.

> [*S & M Lamp Co. v. Lumbermen's Mut. Cas. Co.*, 199 *Cal.App.*2d 446, 18 *Cal.Rptr.* 633, 636–37 (1962) (citations omitted).]

█ Plaintiffs' claim rested entirely on Mrs. Chu's oral testimony concerning the contents of the handbag allegedly stolen at the trade show, without any written corroboration in the form of the records required by the policy issued to plaintiffs. The coverage provided by the policy was expressly conditioned upon plaintiffs maintaining such records. Therefore, in the absence of even substantial compliance with this requirement, plaintiffs are not entitled to recover under the policy. *See Green's Hotel, Inc. v. Commercial Cas. Ins. Co.*, 4 *N.J.* 517, 518–19, 73 *A.*2d 349 (1950).

Accordingly, the judgment in favor of plaintiffs is reversed. Plaintiffs' cross-appeal is dismissed.